24-615. Thank you. We'll give it a second because there's a lot of churn. It's behind you so it probably doesn't distract you. Okay, Mr. Dewey. Judge Robinson, may it please the court. The district court committed two errors in denying Robert Sampson his attorney's fees in this case. First, it erroneously concluded that he was not a prevailing party and that comes to this court on de novo review. Second, the court erroneously found special circumstances that rendered a fee award unjust according to the court. That comes to this court on a use of discretion standard, but this court's case law has greatly limited that discretion for special circumstances finding. On the issue of prevailing party, I direct the court's attention to the May 3rd, 2023 hearing starting at J438. Tracking the language from the Supreme Court just two days ago in Lackey, what happened at this hearing and a few hours later with the entry of the stipulation and order was that the parties themselves conclusively resolved the 88 claim except for the money damages issue. It bore a judicial imprimatur and it granted Robert Sampson enduring relief that materially altered the relationship of the parties. After this hearing, Stony Brook was no longer free to kick him out of school, which they tried to do many times before that. And the morning of this hearing, they had that freedom. That freedom disappeared once the stipulation and order had been entered by the district court. Why isn't that just a settlement? Because it comes with the, it's a stipulation and order. So many of the cases, the other side's sites are cases under where a rule 41 notice of settlement and then the parties themselves dismiss it. But this is a specific order from the court. Thou shall not kick Robert Sampson out of school until August 2024. At least give him that much time to complete his education. Well, until August 2024, does that sound like the preliminary injunction in Lackey? No. This is a final resolution. It's a final resolution of that issue. There's no going, there was nothing else to be done. And there's no external event that mooted that. But didn't all the parties agree that, I mean, this was the whole point of Stony Brook fighting so hard to not stipulate to attorney's fees that this was not a consent decree? Well, they didn't, unlike in Perez where the defendant resisted the idea of calling it a consent decree, it never came up about whether this would be enforceable by the judge. But I think if you look at the terms, 323, it's right there. It's an order of the court that Stony Brook allow him to finish his medical education. Does it affect the analysis that the court ultimately dismissed the case as moot? That suggests the court isn't actually maintaining any ongoing enforcement authority relative to that order. But there was still time left that that order dismissing as moot, that was in February of 2024, and it was until August that Dr. Sampson had to complete his medical education. That circles back to the question then, isn't it just a settlement that could be enforced? No, because the order of dismissing, the mootness happened because everything had been resolved at that point. It was happenstance that there was still this money damages claim out there. I mean, if it hadn't been for the money damages claim, or if, for instance, at this hearing in May of 2023, imagine if Sampson had just said, I give up on the damages claim, let's just let this be the sole leading end of the case. Well, then you might have a dismissal that incorporates the terms of the settlement into it, and the district court maintaining jurisdiction. And then you're in a different category, I think, than what we have here. Well, the order dismissing the case specifically refers to the stipulation in order. That's very different than a lot of the cases where, again, it comes to the court with a 41-type dismissal. The court specifically mentions the May 3, 2023 order in dismissing the case as moot. Why would it have to be dismissed as moot rather than embodying the stipulation in a judgment of injunctive character? That there's a judgment requiring Stony Brook to extend its time to complete medical school until that August 24th date. Why would that necessarily be a mootness in dismissal? I was puzzled by that. I guess it's hard to discern exactly why this court chose the word moot there. But I guess, to me, a case becomes moot, like an actual consent decree labeled as such. The case really becomes moot if that really does resolve all the issues. Well, then any judgment in any case moots the case because it resolves all the issues, right? Right. I guess I'm trying to figure out whether it strikes me as significant for the analysis here. If we're using the consent decree analogy, it's impossible. That's an overstatement, but it's hard for me to see how order in a case, even if it resolves the substantive issue, where the case is ultimately dismissed without any sort of judgment committing the court to further enforce that. If there had been a violation of this agreement, I guess the question is, would that have been contempt of the- I think so, Your Honor. I mean, imagine if a week after, you might recall from being on the MBME case, that the whole purpose of this hearing was to solidify irreparable harm, to show that he's going to still be in school. So your MBME case wouldn't be moot. She intended to reissue the PI on that basis. And so imagine if a day later, my friend here reports that, well, the higher-ups have changed their mind. I mean, it would be a contempt hearing. It would not be just like, well, that's unfortunate. A day after the order was issued or the day after the case was dismissed? Well, either one. A day after the- Well, that distinction is the question here, I think, in part. I suppose flip it the other way. Imagine that the plaintiff did continue to seek money damages, and that litigation went past August 12, 2024, and then that is resolved. Then what this would have been, I think, effectively is a preliminary injunction. I don't think so. And I think if you look at the-because it completely resolved the disputed issue in the case. And if, like, for instance, the case had dragged on so long that he completes medical school, I mean, that doesn't really make the order moot. He got what he wanted. It was an enduring order that- What does enduring mean, then? Well, I think it just-it means that external events don't moot it. It doesn't-or like in the Sol case, there's not like a later ruling that's actually inconsistent with the previous PI. But here, nothing disturbed this deal, really. The deal the parties had is that he has until August 2024. But that's the key word, isn't it? It's the deal that the parties had. This is an order that says on this date the parties stipulate as follows. I'm not even sure what the so-ordered means or contributes to this. Because the judge isn't ordering people to do things. The judge is endorsing something that says the parties stipulate to this. Well, the-it is so ordered that Stony Brook shall allow Robert Sampson to stay in school until August 2024. And finally, even if that's all true, remember that Perez's case did not have retention of jurisdiction, did not give the district judge in that case enforcement authority. In fact, the defendant there refused to go with a consent decree. And so what happened was they contemplated, okay, well, if you have a violation, you've got to file a new action. And the judge in that case reserves the right to try to be assigned that case as a related case. So if you look, even if all of what you're saying is a problem, that's not how this court dealt with it in Perez. Because in Perez, again, there was no retention of jurisdiction. Wouldn't Perez apply to a preliminary injunction, just looking at the language, if they achieve some material alteration of the legal relationship between them and their adversaries and that change bears a judicial imprimatur? So I'm trying to imagine the facts of Perez and how that might come about. I'm having trouble with that. I mean, I just wonder if the broad approach of Perez is fully consistent with Lackey now. It's hard to see how, at least under the facts of Perez, it's hard to see how there could be a problem under Lackey because it was enduring. It was a settlement that was created really at the prompting of the court. That's really what this court was really focusing on is that, just like in this case, it was the judge dictating the terms, really, in Perez. And so I don't see how there's anything inconsistent. The significance there is that it's the judge dictating the terms? Well, that's a very significant part of Perez is that it was really the judge controlling the situation and signaling. Except that in this case, the reason the judge – I'm sorry to interrupt – but the judge was controlling it because of the impact on the other lawsuit. Right. I mean, this was a settlement that the parties long since had reached as far as this case was concerned. And the only thing that was slowing it up or blocking it was the question of attorney's fees, it seems to me, at that point. And now the judge was saying, look, if you do this, then the real action can get going. And the Court of Appeals' – I'm sure the judge didn't say stupid – decision to say that there was no standing there will be solved. Right? Well, that was the whole purpose of this hearing is to demonstrate to this court that there would be irreparable harm if he doesn't get the relief. And this case didn't terminate with a ruling by a judge that you win, Stony Brook loses, and now all we have to do is work out the remedies or something like that. This was kind of a let's put this in a position that makes the other case go forward, and then we'll worry about things later. Well, there's not much to worry about left. I mean, it was just money damages. Right. Because there wasn't anything to worry about for months before that except for the attorney's fees. Which is what distinguishes this from a P.I. case. Yeah. I think I agree with you. I take back any question I had about Lackey. Yeah. So I don't think that Perez is in jeopardy after Lackey at all. I think that this Court has made it clear that there can be enough judicial imprimatur to – where it isn't necessary to have a retention of jurisdiction to enforce. And there's other cases, too, that we cite in the brief. Malecki, Tenth Circuit, Judicial Watch, D.C. Circuit. No retention of jurisdiction to enforce the orders in those cases. So I'll reserve the rest of my time. Thank you. Thank you very much. Attorney Cohen. Good morning, Your Honors, and may it please the Court. Joshua Cohen for Stony Brook University and Maury McGinnis. Samson's not a prevailing party here because he never obtained a judgment on the merits or comparable relief through a court-ordered consent decree or a judicially sanctioned settlement. The stipulation and order that he argues entitles him to attorney's fees is none of those. It's simply one of six voluntary extensions of Samson's enrollment at Stony Brook provided throughout the course of the litigation. Well, it wasn't just – I mean, the difference between that extension and the other ones is the other ones were to facilitate the litigation process. That was actually an extension that would enable him, if he was allowed to sit for the Step 1, would enable him to graduate within the constraints. So that really was the relief he was seeking, not a temporary maintaining of the status quo while the litigation was going on. Respectfully, Your Honor, it wasn't the relief he was seeking. Samson specifically refused to enter into a settlement agreement that would fix this date as a final date because he wasn't sure whether that would be enough time to graduate because at that point he wasn't sure when or if he would get accommodations from NBME. So at the record at page 443, they specifically mention that he could not agree to a settlement agreement because he didn't know if that would be enough time. Was that contemporaneous with when he entered into this agreement that we're talking about? Yes. So Samson's counsel said, we can't agree to a settlement agreement because we can't say that August 2024 would be enough time, but we'll agree to a stipulation. And so what this was, it was no different than the previous extensions, only in length. None of the parties understood at the time this was entered that it would necessarily moot the case because, like Samson was worried about, it very well could have happened that this wouldn't have been enough time for him to graduate. So in that sense, you see it essentially as stipulated to a preliminary injunction, or how do you see it? It's a stipulation, Your Honor. I wouldn't call it a preliminary injunction because there wasn't any assessment of the merits at all and usually parties oppose preliminary injunctions. This is just a stipulation that only has preclusive effect. You're saying it's just an extension of time in a standstill agreement? Effectively, Your Honor, yes. And so the critical question is Judge Robinson's question before, which is, but why isn't this like the final extension that essentially moots the case? And I think you've given your answer to that at least, right? Yes, it ended up mooting the case because NBME immediately granted the extension, the accommodations, that same day. But the parties didn't know it would moot the case, and that's why Samson wouldn't agree to it. I thought they kind of did know, right? I thought the whole point of it, I guess the idea was this would set up the appeal again, and you didn't know that the NBME was standing ready to grant the accommodation? Correct, Your Honor. I mean, NBME had already appealed the PI-1s. When Judge Esrak gave the plaintiff an injunction against them, they appealed it. Yes. And that led to the there's no standing because of this case ruling by this court. And then now we were back in that posture. So maybe NBME would fold, or maybe they would appeal again. And if they appealed again, who knows how long that would take and what the outcome would be because this court had never addressed the merits of that. That's correct, Your Honor. And at the time of the NBME appeal, Stony Brook had only agreed to a 60-day extension from October to December. So this is really no different than that except that it's much longer so that if NBME appealed it, it wouldn't run into this problem of we're not sure if it can provide relief. Here's what strains a little bit my credulity around that framing of this agreement. What hung it up was the question of whether there would be attorney's fees involved. And in the course of a litigation, we're going to stipulate for another extension, another extension, another extension. You don't, attorney's fees aren't involved in those incremental extensions. The conversation about attorney's fees only comes up if at least one and if not both of the parties understand it to be tantamount to a final resolution. I'm not going to say judgment because that gets into the judicial imprimatur, but a final resolution of the case. Why would you even be talking about fees if this was just an extension to facilitate further litigation? Yes, Your Honor. So if Your Honors look at pages 441 to 443 of the record, it talks about this. Stony Brook wanted to settle this, wanted to sign a settlement agreement, but Samson wouldn't agree to it because he wanted a consent decree and he wouldn't agree to the August 2024 deadline as a final date. So Samson refused to sign a settlement agreement. And this stipulation didn't resolve any of his claims against Stony Brook. I'd like to pose the hypothetical instead of what if Stony Brook had gone against its word, what would have happened? What if August 2024 came and Samson needed another extension? There would be nothing precluding him from suing Stony Brook again for discrimination because he never gave away his claims in a consent decree or a settlement agreement and his claims were never extinguished by a final judgment on the merits. And the reason you were talking about attorney's fees was that was part of the settlement negotiations. Correct, Your Honor. That there was a settlement negotiation in which Stony Brook was prepared to give him what he wanted, to let him go back to school without any of these limitations, right? Except that he had to pass the NVME, of course. But was prepared to give him everything that Stony Brook could give him. And the holdup or the barrier to that was that Stony Brook would not agree to a stipulation to pay attorney's fees. Correct. So attorney's fees were in the air from the beginning, not because the case was over and the judge had decided the merits and the plaintiff had won, but because there was a settlement agreement that failed because the parties couldn't agree on all the terms, prominently including the attorney's fees. And then we find ourselves instead with this order, which is what it is. And that's what we have to interpret. Yes, Your Honor. And so I think what this shows, and this goes to the district court's alternative holding, is that it wasn't an abusive discretion to hold that even if Samson were a prevailing party, special circumstances would render a fee award unjust here. Because Stony Brook truly was caught in the middle of Samson's dispute with NVME, despite repeatedly supporting his request for accommodations for over five years by writing letters of support and certifying that his accommodations were necessary. But even though Samson retained counsel in 2018 and recognized at least by 2020 that suing NVME would be required to obtain his accommodations, he didn't sue NVME until after his graduation deadline had already passed. Sam? Just a procedural question. Why the Board wasn't joined in this suit, or at least the cases, they weren't consolidated in any way? I don't know, Your Honor. Again, there wasn't a single ruling on the merits of this case. The district court didn't even rule on the PI motion. So this never got to the point where we could litigate necessary parties or anything like that. This really, there wasn't a single, the court never issued a single ruling on the merits of this case. And I'd like to just take a moment to distinguish this case from Perez. In Perez, Perez involved a settlement agreement in which the plaintiffs agreed to dismiss their claims in exchange for the defendant's change in conduct. And the parties conditioned their dismissal on the court's approval of the settlement. That didn't, and the dismissal explicitly incorporated the terms of the settlement. Here, Samson refused to sign a settlement agreement, and the stipulation didn't resolve any of his claims. The stipulation didn't provide that the court would retain jurisdiction to enforce its compliance. The district court didn't condition its dismissal on Stony Brook's compliance with its terms. This did not conclusively resolve the matter. There was a discussion, a very brief and somewhat cryptic discussion, though, of should there be an order, right? There was a, is this just going to be a stipulation or is it going to be an order? And as I read it, there was a little bit of a shrug going on, but without the body language, it's just it was decided that it should be an order, not just a stipulation. I mean, you could have this stipulation not signed by the judge, right? Well, I guess the judge still has to agree to the extension of time. That's the problem. So, Your Honor, you're right that the district court noted that it was ambivalent about whether it needed to be submitted on the docket as a letter. Whether it's a letter or an order. That's correct. And if it was a letter, this case would be indistinguishable from Mastrio v. Sebelius, which we cite in our brief. Although the judge might have still ordered the letter. That's right. District court judges endorse. The district court is a little crazy with that stamp. We have the stamp. Yes, yes. The district court. Put it on everything. That's right, Your Honor. And it didn't fundamentally change the nature of this order. And it was just done, as the district court mentioned, to memorialize it so that the court could address the problems between Sampson and the NBME. And by your latter argument, we don't need to decide prevailing party if we agree with you that it wasn't abuse of discretion to conclude special circumstances, right? Correct, Your Honor. We can skip to that if you agree with me. I agree, Your Honor. And I would also just like to take a moment to discuss why the Tenth Circuit case that my friend mentioned, Al-Maliki, is different. Again, in that case, the court issued a judgment on the merits when it granted a motion to remand that conclusively resolved the case. And that didn't happen here. Although it happened that Sampson didn't need an additional extension past August 2024, the parties didn't know at the time that that would be enough. And Sampson never signed a settlement agreement. Thank you. Thank you, Your Honors. I ask the court to affirm. Thank you. Attorney DeWitt, two minutes. Your Honors, the whole point of this lawsuit was to get more time to graduate from medical school. And so I think it's important to look at this and see that by getting the August 24 date agreed to, that got the job done. This is not a fleeting situation. There was nothing, I mean, yes, it is true there was argument over maybe keeping, there wasn't an objection to having a consent decree if you look at 441. The objection was not having a date certain. But I don't see how a date certain is necessary for the alteration of the legal rights of the parties. He has until August 24, 2024, after this stipulation and order is signed. You can see though, I mean, I agree with you about that, mostly. I mean, I hear their point about it isn't quite final. But even if you were right that this changes, gives him everything he needed, that's always true of a settlement agreement. At least it gives the plaintiff party everything that they're willing to settle for. I mean, it's not everything they would have wished in the case. But it gives them enough that they're comfortable settling the case. So that doesn't distinguish a settlement agreement at all. Look at the facts of Davey, the D.C. Circuit. So the plaintiff in Davey went on to lose that case. The interim relief where the CIA was ordered to produce documents came two years before the dismissal. And in that case doesn't survive Lackey at all, does it? I think it does. They wanted these documents. They got these documents. They had some other issues left about searching and stuff. But they got the bulk of what they wanted in there. You don't have to win on everything to be prevailing party. And they got the heart of what they wanted in that initial order. I don't see how Lackey does anything to disturb Davey or this Courts Perez decision. And on the issue of special circumstances, I don't have a lot of time to talk about it. But I think if you look at it, it's not good faith of a defendant has never been a basis for special circumstances. And procedurally, Stony Brook never raised this issue. If you look at 576, it's only three pages. And the whole argument there about these being unjust is premised on how it would be unjust for Sampson to be a prevailing party. That argument is actually inconsistent with a special circumstances argument. The argument is structured. I know it doesn't place it in the relevant case law as I read it. But the opening sentence of the paragraph in the briefing is something like even if a prevailing party, and then it makes arguments about fair administration or just administration or something like that. Again, it's not quite invoking the right case law. But it seems to me it is an alternative argument. Even if you conclude prevailing party, here are arguments, all of which were adopted by the district court in furtherance of its conclusion as to special circumstances. Well, two things. In Hescott, this came up. In Hescott, they observed that the defendant there got on the bandwagon of special circumstances after the court raised it sua sponte. It was questionable. But then Hescott went on to look at why special circumstances aren't there. And that's because it's good faith action on the defendant's part is not a basis to award special circumstances. Perhaps it might go to reasonableness of some fees. And that might be a way this court could resolve this case is to remand on, don't say no fees at all, but let some of these arguments come in as arguments for a reduction of fees, reduction of the reasonable fees. Thank you. We appreciate both your arguments and we'll take this case under advisement.